Argued and submitted January 14, affirmed March 2, 1983

MILES et ux,
*Respondents,*
*v.*
McSMITH,
*Appellant.*

(120,109; CA A24519)
659 P2d 431

Michael J. Martinis, Salem, argued the cause for appellant. With him on the brief were Norman F. Webb, and Webb & Martinis, Salem.

R. Roger Reif, Canby, argued the cause for respondents. With him on the brief were Richard A. Weill, and Reif & Reif, Canby.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

**NEWMAN, J.**

Defendant appeals from an amended decree ordering her to sell certain real property to plaintiffs for a purchase price of $250,000. We affirm.

On October 3, 1972, plaintiff Robert Miles and RMWG Investments, Inc., an Oregon corporation, entered into a lease expiring "September 31 [sic], 1977," with defendant and her husband, M. R. McSmith, covering commercial property in Woodburn. Section 14 of the lease contained an option to purchase which stated:

> "On May 1st, 1977, and not later than June 1st, 1977, tenant shall have the right to purchase the real property hereby leased at and for the agreed sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00) upon the terms and conditions as set forth in the attached contract marked Exhibit 'B' and by this reference made a part hereof. Notice of the election to purchase shall be delivered to Landlord in writing not earlier than May 1st, 1977, and not later than June 1st, 1977. Thereafter, and while this lease is in effect, Tenant shall have the right to purchase the herein described property at and for the agreed sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00) plus an increase of 6 per cent per annum on the original purchase price measured from June 1, 1977, which purchase price shall continue until notification in writing by Tenant of his intent to purchase and the proposed sale thereafter to be concluded within thirty (30) days from the date of receipt of notice. The form of the sale agreement shall also be in the manner as set forth in the attached Exhibit 'B.'"

Attached to the lease was the sale agreement. It set forth a purchase price of $250,000, of which $72,500 was to be paid as a down payment and the remainder in monthly payments of not less than $2,153.61, with interest at the rate of eight percent per annum on deferred balances. The sale agreement named defendant and M. R. McSmith as sellers and plaintiff Robert Miles as buyer.

On May 21, 1977, plaintiffs as "tenants" and defendant and M. R. McSmith as "landlords"[1] executed an

---

[1] No issue was made that one of the tenants, RMWG Investments, Inc., an Oregon corporation, was not named as a plaintiff in the suit nor did it sign the

"Amendment and Extension to Lease" (the extension), which read:

"The parties to this amended lease are M. R. McSmith and June L. McSmith, husband and wife, Landlord, and Robert R. Miles and Robin J. Miles, husband and wife, Tenant.

"WHEREAS, the lease was entered into on October 3, 1972, between the parties hereto and an additional party as tenant by the name of RMWG INVESTMENTS, INC., an Oregon Corporation, dba Miles Chevrolet, and ROBERT MILES.

"WHEREAS, it is the desire and wish of the parties being the landlord and tenant above-mentioned to extend the attached lease for an additional term of three years, now, therefore,

"IT IS HEREBY AGREED AS FOLLOWS:

"1. This lease shall be extended for an additional three year term on the same terms and conditions as contained in the original lease, a copy of which is attached hereto and made a part hereof, at and for the rental as set forth therein.

"2. That section 14, OPTION TO PURCHASE is hereby amended as follows: The dates of May 1st, 1977, and June 1st, 1977, are to be changed to May 1st, 1980, and June 1st, 1980.

"3. EXHIBIT 'B', the contract under which the purchase is to be accomplished is hereby amended as follows: That the down payment shall be FIFTY-THOUSAND AND NO/100 DOLLARS ($50,000.00) and the interest on the unpaid balances shall be at the rate of 8-1/2. per annum. All of the rest of the terms and conditions as contained in the original lease and contract attached to said lease shall remain the same."

In January, 1978, M. R. McSmith died. On May 27, 1980, plaintiffs attempted to exercise the option to purchase for a price of $250,000, and on May 30, tendered the down payment of $50,000 by certified check. Defendant returned the down payment on June 5, 1980, claiming that the

extension. The pleadings treat as admitted facts that plaintiffs' signed both documents as tenants and that defendant and M. R. McSmith signed both documents as landlords. Accordingly, we will proceed on that basis. In any event, the corporation was not a party to the extension agreement, and the time for it to exercise any option it had under the original lease had expired before the exercise of the option by plaintiffs.

purchase price, under Section 14 of the lease, had escalated to $295,250. There was no dispute that the extension reduced the amount of the down payment in the sale agreement from $72,500 to $50,000 and increased the interest rate on deferred balances from six percent to eight and one-half percent.

Plaintiffs sued for a declaratory judgment, alleging that the terms of the sale were:

"A.   Selling price: $250,000

"B.   Down payment: $50,000

"C.   Balance of $200,000 shall be paid in monthly installments of not less than $2,153.61, including interest at the rate of 8.5% per annum on the unpaid balance"

and that defendant was contending that the purchase price was $295,250, and asking for a judgment that defendant sell the property to plaintiffs on the terms claimed by plaintiffs and for attorney fees.

Defendant argued that section 14 of the lease, as amended by the extension, was susceptible to more than one interpretation, that there were five separate dates in section 14 of the lease and that paragraph 2 of the extension did not state which of those dates was to be changed. The crucial question, according to defendant, is "whether the single date (*i.e.,* of June 1, 1977), standing alone in the third sentence of section 14 was to be changed." That is the date from which the escalation of 6 percent per annum on the agreed price is measured.

The trial court ordered defendant to sell the real property to plaintiffs for $250,000 and on the other terms named by plaintiffs and awarded plaintiff attorney fees. Defendant's principal assignment of error is that the trial court erred in holding (1) that section 14 of the lease as amended by the extension is not ambiguous and (2) that the purchase price is $250,000 rather than $295,250.

The trial court heard extensive extrinsic evidence to determine if an ambiguity existed. It found no ambiguity. Neither do we. *Timberline Equip. v. St. Paul Fire and Mar. Ins.,* 281 Or 639, 576 P2d 1244 (1978); *May v. Chicago Insurance Co.,* 260 Or 285, 490 P2d 150 (1971). The trial court found that the extension changed all the dates of May

1, 1977, and June 1, 1977, contained in section 14 of the lease, including the date from which the six percent per annum price escalation is to be measured, that the price escalation is to be measured from July 1, 1980, and that the purchase price is $250,000, and not $295,250. We find no error here.

We have considered defendant's other assignments and find no error.

Affirmed.